```
 1
 2
 3
 4
 5
 6
 7
 8                     UNITED STATES DISTRICT COURT
 9                    EASTERN DISTRICT OF CALIFORNIA
10
11  HOME BUILDERS ASSOCIATION OF
    NORTHERN CALIFORNIA, et al.,
12                                       NO. CIV. S-05-629 LKK/GGH
13           Plaintiffs,
14      v.                                    O R D E R
15  UNITED STATES FISH AND WILDLIFE
    SERVICE, et al.,
16
             Defendants.
17                                   /
18  DEFENDERS OF THE WILDLIFE, et al.,
19           Intervenors.
20                                   /
```

Tsakopoulos Investments, George Tsakopoulos and Drosoula Tsakopoulos, Trustees of the Tsakopoulos Family Trust (hereinafter referred to as Tsakopoulos) are seeking to intervene as plaintiffs in the suit filed by Home Builders Association of Northern California, Building Industry Legal Defense Foundation, California Building Industry Association, California State Grange and

1

Greenhorn Grange (hereinafter Home Builders).[1] The suit was brought against the United States Fish and Wildlife Service (FWS), with Defenders of Wildlife, Butte Environmental Council and the California Native Plant Society participating as defendant intervenors (hereinafter environmental groups). The current Home Builders complaint alleges that the FWS violated the Endangered Species Act and the National Environmental Policy Act when it designated critical habitat for fifteen different species.

The Federal Defendants have filed a statement of non-opposition. The environmental groups have filed an opposition to the requested intervention. Tsakopoulos seeks intervention both as a matter of right under Rule 24(a) and/or by permissive intervention under Rule 24(b)(2), and agrees to intervention limited to involvement with issues related to their direct interests.

## I.
## FACTS[2]

Tsakopoulos owns approximately 865 acres of property in Sacramento County. The property had been excluded from critical habitat in 2003, but was designated as critical habitat in 2005 for

---

[1] The court also recently granted a motion to intervene as plaintiffs by the City of Suisun.

[2] The facts are taken from the papers of Tsakopoulos and are assumed to be true only for the purposes of this motion. Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001)(holding that the court is to take facts alleged in the pleadings, motion, and supporting declarations as true for purposes of the motion to intervene).

2

two plant species, Sacramento Orcutt Grass and Slender Orcutt Grass, and one species of vernal pool crustaceans, vernal pool tadpole shrimp.

After the August 6, 2003 Rule established economic exclusions from critical habitat in Sacramento County, and in partial reliance on it, Tsakopoulos initiated various steps towards developing their land.  See Declaration of John M. Taylor at ¶¶ 2, 3.  These preparations included purchasing 645 of the 865 acres currently owned, hiring an engineering and planning firm to design the layout of the housing and commercial development community, meeting with County of Sacramento planning staff regarding a development application for Excelsior Estates, meeting with representatives of Elk Grove Unified School District to plan the locations of required new schools, and hiring an economic planning firm to evaluate the fiscal impact to the County of Sacramento as a result of this development.

These plans anticipate the ultimate construction of approximately 2,800 new single family homes, with an anticipated average occupancy of five persons per household, and anticipated new home prices ranging from $325,000 to $500,000, approximately 30 acres of commercial development, high density residential, elementary and high schools, and parks and open space.

Tsakopoulos alleges that the economic development projected for the property is consistent with regional projections and plans for growth.  On December 16, 2004, the Sacramento Area Council of Governments ("SACOG") adopted a land use concept for the Sacramento

3

1  region known as the "Regional Blueprint." The Blueprint's
2  Preferred Scenario Map designates the Excelsior Estates property
3  for single family residential, high-density mixed residential and
4  industrial uses, all of which are consistent with Plaintiffs'
5  development plans. SACOG requested that FWS use information from
6  its Blueprint as the basis for the economic exclusions in the
7  August 2005 Final Rule, but the FWS declined to do so. See Taylor
8  Dec. at ¶¶ 4, 6.

9  Tsakopoulos claims that FWS' designation of this property as
10 critical habitat will severely inhibit the planned development of
11 its property. They argue that they were not aware of the
12 designation of these lands as critical habitat until after the
13 August 2005 Final Rule, and that they promptly contacted the FWS
14 to provide information explaining why they believe Excelsior
15 Estates was not appropriate as critical habitat. Tsakopoulos has
16 pending before FWS a formal Petition for Reconsideration of the
17 designation of this property.

## II.

## ANALYSIS

**A.   INTERVENTION AS A MATTER OF RIGHT**

An order granting intervention as of right is appropriate if the party seeking to intervene can demonstrate that (1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application

4

is timely; and (4) the existing parties may not adequately represent the applicant's interest." Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998); County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir. 1986), cert. denied, 480 U.S. 946 (1987). The party seeking to intervene "bears the burden of showing that all the requirements for intervention have been met." United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004).

The Ninth Circuit has held, often in the context of environmental disputes, that "Rule 24 is broadly construed in favor of intervention." United States v. Washington, 86 F.3d 1499, 1503 (9th Cir. 1996); Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998)("In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention."). Courts are to "take all well-pleaded nonconclusory allegations in the motion to intervene, proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

The test for intervention should be applied with an eye on practical consideration. United States v. Stringfellow, 783 F.2d 821, 826 (9th Cir. 1986)(citing Fed. R. Civ. P. 24(a)(2) advisory note 9)("if an [applicant] would be substantially affected in a practical sense by the determination made in an action, [the

5

applicant] should, as a general rule, be entitled to intervene . . . .")).

### 1. **Timeliness**

In determining whether a motion to intervene is timely, the Ninth Circuit has set out the following three considerations: (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene. Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996). This court has just reviewed a similar motion to intervene for the City of Suisun in which the court found that the motion was just barely in time. Here, Tsakopoulos argues that they are also in time, despite the fact that the opening motions for summary judgment were to be filed on March 20, 2006. They filed their motion on that date, anticipating that the court might grant their motion to intervene, but it is not clear whether the defendants will have also made the same assumption in preparing their responding papers. Tsakopoulos states that they waited to file the motion until now because they have been working with FWS to resolve their concerns out of court, but they provide no evidence to support this.[3] Tsakopoulos' showing is less than fully convincing in light of the time frame and the knowledge that this court had set a briefing schedule in January. Nonetheless, none

---

[3] This is the same argument that the City made, but they still managed to get their application in sooner. It also appears from looking at the complaint that the final rule was issued on August 11, 2005 but Tsakopoulos did not send a letter to FWS until November 15, 2005.

6

of the parties have asserted that they would be prejudiced by the timing of the intervention and thus the court will not deny the motion on this ground.

**2.   <u>Significantly Protectable Interest Relating to the Action</u>**

A significantly protectable interest can be shown if the proposed intervenor (1) "asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." <u>Donnelly v. Glickman</u>, 159 F.3d at 409 (emphasis added); <u>Southern California Edison Co. v. Lynch</u>, 307 F.3d 794, 803 (9th Cir. 2002); <u>United States v. City of Los Angeles</u>, 288 F.3d 391, 398 (9th Cir. 2002). The "interest test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the interest test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." <u>United States v. City of Los Angeles</u>, 288 F.3d 391, 398 (9th Cir. 2002); <u>Southern California Edison Co. v. Lynch</u>, 307 F.3d at 803; <u>Southwest Center for Biological Diversity v. Berg</u>, 268 F.3d 810, 818 (9th Cir. 2001).

Here, Tsakopoulos owns land which is within the area designated as the critical habitat which is being challenged in this action. They allege that they have due process and economic interests which are protectable and are connected to this action.

////

1  Tsakopoulos' asserted economic interests are related to their plans
2  for development of the land they own within the critical habitat
3  area.  Although there is some dispute about the exact development
4  restrictions which exist on the land, it is reasonable to conclude
5  that direct land owners have some significant economic interests
6  in the restrictions which may be placed on their land as result of
7  an Endangered Species Act designation.  Cases have found that real
8  property rights constitute "concrete" economic interests.  See
9  Sierra Club v. EPA, 995 F.2d 1478, 1483 (9th Cir. 1993);
10 Confederated Tribes & Bands of Yakama Indian Nation v. Baldrige,
11 95 F.3d 1157 (9th Cir. 1996).  While the Ninth Circuit has held
12 that "[a] mere interest in property that may be implicated by
13 litigation is not a passport to participate in the litigation
14 itself" that was in a case where the interests being discussed were
15 more indirect than that of the actual land owner.  United States v.
16 Alisal Water Corp., 370 F.3d 915, 920 n.3 (9th Cir. 2004)("To hold
17 otherwise would create a slippery slope where anyone with an
18 interest in the property of a party to a lawsuit could bootstrap
19 that stake into an interest in the litigation itself.").

20      This court found that the City of Suisun did not have a
21 significantly protectable interest in this litigation.  The instant
22 motion for intervention differs from the City's because Tsakopoulos
23 actually owns the land that they are seeking to protect from
24 critical habitat designation.  As the earlier order pointed out,
25 a bare expectation is not a strong enough economic interest to
26 justify intervention as of right.  Southwest Center for Biological

8

Diversity v. Berg, 268 F.3d 810, 819 (9th Cir. 2001); Southern California Edison Co. v. Lynch, 307 F.3d 794, 803 (9th Cir. 2002). In the case of the City, the question was more speculative, because it hinged upon the actions of many outside actors and other factors since the City did not have control over the land.  Here, while it is unclear what the exact extent of the economic impact will be, it is not overly speculative to assume that the designation as critical habitat will have some effect on the profitability of the Tsakopoulos land.[4]

### 3. **Impairment of Interests**

To meet the impairment prong, applicants need only demonstrate that "disposition of the lawsuit may adversely affect the applicant's interest if intervention is not granted." United States v. State of Washington, 86 F.3d 1499, 1503 (9th Cir. 1996). The Advisory Committee Notes for the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Committee's Note to 1966 Amendments.

Issue preclusion and stare decisis have been held to prevent an applicant from being able to protect its interests. United States v. Stringfellow, 783 F.2d 821, 826 (9th Cir. 1986), vacated on other grounds sub nom Stringfellow v. Concerned Neighbors in

---

[4] Having found that the Tsakopoulos have significant enough interest in their real property, the court need not reach the due process argument.

9

1  Action, 480 U.S. 370 (1987).  This court's resolution of the
2  validity of the FWS critical habitat designation would likely have
3  some preclusive effect on later challenges to that same FWS
4  designation.  If Tsakopoulos continues to pursue resolution with
5  the FWS, the agency would likely be constrained by any decision
6  made in this case. Sierra Club v. U.S. E.P.A., 995 F.2d at 1486.
7  Additionally, the determination made in this case regarding the
8  validity of the designation will have a practical regulatory effect
9  on the Tsakopoulos land.

### 4. Adequate Representation of Interests

11     The final factor asks whether the interests of the party
12 seeking to intervene are adequately represented by other parties
13 in the litigation.  The factors governing whether existing parties
14 represent intervenor's interests include "(1) whether the interest
15 of a present party is such that it will undoubtedly make all the
16 intervenor's arguments; (2) whether the present party is capable
17 and willing to make such arguments; and (3) whether the would-be
18 intervenor would offer any necessary elements to the proceedings
19 that other parties would neglect." Northwest Forest Resources
20 Council v. Glickman, 82 F.3d 825, 838 (9th Cir. 1996).  An
21 applicant for intervention has the burden of demonstrating that its
22 interests may not be adequately represented by the existing parties
23 to the suit. Blake v. Pallan, 554 F.2d 947, 954 (9th Cir. 1977);
24 Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 528 (9th Cir.
25 1983).  The Supreme Court has explained that this burden is
26 "minimal." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.

10 (1972).  "[T]he Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate."  Id.

Here, the environmental groups argue that the interests Tsakopoulos seeks to protect are adequately represented by Home Builders.[5]  They argue that they both share the same objective in the litigation and that Home Builders is an organization formed to protect the interests of developers like Tsakopoulos.  It is established that where the party seeking to intervene has "the same ultimate objective" in the litigation that "there is a presumption of adequacy of representation."  League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1305 (9th Cir. 1997)(quoting Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 838 (9th Cir. 1996)).  It has also been held that mere variations in strategy, "are not enough to justify intervention as a matter of right."  United States v. City of Los Angeles, 288 F.3d 391, 402 (9th Cir. 2002).

Tsakopoulos argues that the Home Builders will not adequately represent Tsakopoulos' interests because the objective of the Home Builders covers many species and locations, and lacks the ability to attest to relevant events regarding Excelsior Estates.  Additionally, the Home Builders failed to plead the claim that the FWS failed to provide adequate public notice and comment.

////

---

[5] The environmental groups note that the City of Suisun, after asserting that they had different interests, ended up simply filing a "notice of joinder" to the motion for summary judgment which was filed by Home Builders.

11

1    The argument by the environmental groups is not without merit.
2 On the other hand, it is possible that the greater organization may
3 have to make trade-offs in strategy which could compromise the
4 specific interests of Tsakopoulos.
5    In the cases which emphasize that a shared ultimate objective
6 defeats intervention by right, the objective is usually framed by
7 the court as a narrow one where the specific interests would be
8 properly protected because the nuance may not be as significant.
9 See, e.g., United States v. City of Los Angeles, 288 F.3d at 402
10 (court found that the intervenors did "not contest any portion of
11 the consent decree.  Rather, they [sought] to intervene merely to
12 ensure that it [was] strictly enforced.); Northwest Forest Resource
13 Council v. Glickman, 82 F.3d at 838 (the goal was "seeking the same
14 limited interpretation of Section 2001(k)(1)); Oregon Environmental
15 Council v. Oregon Dept. of Environmental Quality, 775 F.Supp. 353,
16 359 (D. Or. 1991)(the issue was "whether the DEQ is interpreting
17 and applying the terms of the implementation plan for the State of
18 Oregon in the manner that is required by the Clean Air Act.").
19    In the matter at bar, the basic claims asserted are the same
20 and the ultimate result will probably not vary.  Nonetheless, the
21 proposed complaint makes specific allegations regarding the land
22 owned by Tsakopoulos and they have demonstrated a more specific
23 goal for their involvement in the case.  This factor is a close
24 call, but since the standard is to be applied liberally the court
25 finds that the Tsakopoulos have shown that their interests are
26 specific enough that they may not be adequately represented by the

Home Builders or the City of Suisun.  The complaint that they have filed does vary somewhat from the Home Builders' by making specific requests about the Tsakopoulos land, and they have filed their own motion for summary judgment (in contrast to the City of Suisun which ended up just joining that of the Home Builders).

**B.    RESTRICTIONS**

The Tsakopoulos' request for intervention provides that they seek to intervene under similar restrictions to those which the court placed on the City of Suisun, namely that it be restricted to raising arguments which relate to the issues concerning the species on the land that the company owns, and that it will not raise any arguments connected with the related case.  In light of the court's concern that Home Builders are already adequately representing the general interests of the Tsakopoulos, this restriction will be adopted.

### III.

### CONCLUSION AND ORDER

The motion to intervene by Tsakopoulos is GRANTED with the restrictions noted above.

IT IS SO ORDERED.

DATED: April 19, 2006.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

13