1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11  HOME BUILDERS ASSOCIATION OF
    NORTHERN CALIFORNIA, BUILDING
12  INDUSTRY LEGAL DEFENSE
    FOUNDATION, CALIFORNIA
13  BUILDING INDUSTRY ASSOCIATION,
    CALIFORNIA STATE GRANGE, and
14  GREENHORN GRANGE,

15          Plaintiffs,
                                     NO. CIV. S-05-0629 WBS GGH
16                                   (CONSOLIDATED WITH NO. CIV.
                                     S-05-2524 WBS GGH)
17  and

18  CITY OF SUISUN,                  ORDER RE: MOTION FOR
                                     ATTORNEYS' FEES
19
            Plaintiff-Intervenor,
20
    and
21
    TSAKOPOULOS INVESTMENTS,
22  TSAKOPOULOS FAMILY TRUST,
    DROSOULA TSAKOPOULOS, and
23  GEORGE TSAKOPOULOS,

24          Plaintiff-Intervenors,

25          v.

26  UNITED STATES FISH AND
    WILDLIFE SERVICE; H. DALE
27  HALL, Director of the United
    States Fish and Wildlife
28  Service; UNITED STATES
    DEPARTMENT OF INTERIOR; and
    DIRK KEMPTHORN, Secretary of

1  the United States Department

2  of Interior,

3          Defendants,

4  and

5  DEFENDERS OF WILDLIFE, BUTTE
   ENVIRONMENTAL COUNCIL, AND
6  CALIFORNIA NATIVE PLANT
   SOCIETY,
7
           Defendant-Intervenors.
8  ────────────────────────────

9
   BUTTE ENVIRONMENTAL COUNCIL,
10 DEFENDERS OF WILDLIFE,
   CALIFORNIA NATIVE PLANT
11 SOCIETY, SAN JOAQUIN RAPTOR AND
   WILDLIFE RESCUE CENTER, SIERRA
12 FOOTHILLS AUDUBON SOCIETY, and
   VERNALPOOLS.ORG,
13
14          Plaintiffs,

15      v.

16 DIRK KEMPTHORN, Secretary of
   the Interior, and U.S. FISH
17 AND WILDLIFE SERVICE,

18          Defendants.

19 ────────────────────────────

20

21                 ----oo0oo----

22          Currently before the court is plaintiffs Butte

23 Environmental Council, Defenders of Wildlife, California Native

24 Plant Society, San Joaquin Raptor and Wildlife Rescue Center,

25 Sierra Foothills Audubon Society, and Vernalpools.Org's

26 (collectively, "plaintiffs") amended motion for attorneys' fees.

27 The motion stems from this court's remand order requiring

28 defendants United States Fish and Wildlife Service, H. Dale Hall,

1  and Dirk Kempthorn (collectively, "defendants") to reconsider

2  various economic exclusions listed in their critical habitat

3  designation of over 800,000 acres of land in California and

4  Oregon.

5  I.   <u>Factual and Procedural Background</u>

6          To avoid repetition, the court will refrain from

7  reciting the entire factual and procedural background, which

8  essentially remains the same as in its previous order on the

9  parties' cross-motions for summary judgment.  (Nov. 1, 2006 Order

10  3-9.)  Below, the court only highlights facts relevant to this

11  motion as well as significant post-order events.

12          These consolidated cases involved challenges to

13  defendants' designation of critical habitat for fifteen vernal

14  pool species listed as threatened or endangered under the

15  Endangered Species Act (ESA).  16 U.S.C. §§ 1531-1540.  On August

16  6, 2003, defendants issued an "initial" critical habitat

17  designation that excluded more than one million acres from ESA

18  protection for economic and non-economic reasons.  68 Fed. Reg.

19  46,684; (Nov. 1, 2006 Order 7:15-18.)  In January of 2004,

20  plaintiffs challenged these exclusions as violations of the ESA,

21  and the court subsequently remanded the matter to defendants for

22  reconsideration but did not vacate the designation in the

23  interim.  (<u>Id.</u> at 7:19-23.)  After reconsideration, defendants

24  issued two separate final rules regarding their economic and

25  non-economic exclusions.  70 Fed. Reg. 11,140 (Mar. 8, 2005)

26  (detailing non-economic exclusions); 70 Fed. Reg. 46,924 (Aug.

27  11, 2005) (detailing economic exclusions).

28          On December 13, 2005, plaintiffs filed another lawsuit

1    alleging that defendants' revised exclusions continued to violate

2    the ESA.   On November 1, 2006, this court granted plaintiffs'

3    motion for summary judgment on the limited ground that

4    defendants' reasoning regarding their revised economic exclusions

5    failed to adequately consider recovery benefits under the ESA

6    pursuant to <u>Gifford Pinchot Task Force v. U.S. Fish & Wildlife</u>

7    <u>Serv.</u>, 378 F.3d 1059, 1069 (9th Cir. 2004).   (Nov. 1, 2006 Order

8    63:10-16.)   In all other respects, plaintiffs' motion for summary

9    judgment was denied and defendants' motion for summary judgment

10   was granted.   <u>Infra</u> n.10 and accompanying text.   Accordingly, the

11   court remanded the matter back to defendants with instructions to

12   promptly submit a new final rule that takes the ESA's recovery

13   standard under adequate consideration.   (<u>Id.</u> at 70-71.)   Once

14   again, the court did not vacate the designation in the interim.

15   (<u>Id.</u>)

16          On November 16, 2006, plaintiffs filed a motion for

17   reconsideration, clarification, or amendment pursuant to Rule

18   59(e).   (Pls.' Mot. to Am. J.)   Although the court removed one

19   paragraph inadvertently included in its prior 71-page opinion,

20   the court rejected (1) plaintiffs' claim that the non-economic

21   exclusions were invalid (Jan. 24, 2007 Order 8:19-9:23); (2)

22   plaintiffs' claim that defendants' economic analysis was faulty

23   and "decline[d] to instruct [defendants'] on remand that it may

24   not conduct a coextensive analysis" (<u>Id.</u> at 15:3-11); and (3)

25   plaintiffs' claim that the economic exclusions should be vacated

26   during the remand. (<u>Id.</u> at 15:13-17:11.)

27          After reconsidering the recovery benefits as instructed

28   by the court, defendants concluded that the challenged exclusions

4

remained reasonable and thus made no change to their final critical habitat designation. (Defs.' Mem. in Opp'n to Pls.' Am. Mot. for Att'ys' Fees 3:24-26.)   On May 31, 2007, defendants subsequently published a clarification for the basis of the economic exclusions that addressed recovery benefits under <u>Gifford Pinchot</u>. 72 Fed. Reg. 30279 (May 31, 2007).  In their clarification, defendants also voluntarily addressed other issues, including recovery benefits related to the non-economic exclusions originally challenged by plaintiffs in this case.  <u>Id.</u> On July 31, 2007, the court entered final judgment dismissing the case. (July 31, 2007 J.)

Plaintiffs now move for an award of attorneys' fees under 16 U.S.C. § 1540(g)(4) of the ESA,[1] contending that they succeeded in their litigation against defendants when the court remanded the matter and required defendants to reconsider their exclusions in light of the recovery standard as delineated in <u>Gifford Pinchot</u>.  In opposition, defendants argue that plaintiffs are ineligible for an attorneys' fee award because their success was de minimis, or in the alternative, that plaintiffs are entitled to no more than a minimal fee award in light of their minimal success.

II. <u>Discussion</u>

A.   <u>Eligibility for Attorneys' Fees Under the ESA</u>

---

[1]    Anticipating opposition to their eligibility and entitlement to attorneys' fees under the ESA, plaintiffs also moved for fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(a) & (d).  (Pls.' Mem. in Supp. of Am. Mot. for Att'ys' Fees 1:16-18.)  In their opposition, however, defendants do not dispute that the ESA is the governing statute in this case.

1   Under the citizen suit provision of the ESA, a court
2   may award attorneys' fees to a party "whenever the court
3   determines such award is appropriate."   16 U.S.C. § 1540(g)(4).
4   An award of attorneys' fees is "appropriate" under the ESA where
5   the plaintiffs have (1) achieved "some degree of success on the
6   merits," <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 694 (1983),
7   and (2) contributed substantially to the goals of the ESA.[2]
8   <u>Carson-Truckee Water Conservancy Dist. v. Sec'y of the Interior</u>,
9   748 F.2d 523, 524 (9th Cir. 1984) <u>overruled on other grounds by</u>
10  <u>Marbled Murrelet v. Babbitt</u>, 182 F.3d 1091, 1094-95 (9th Cir.
11  1999).

12  While defendants admit that plaintiffs obtained a
13  favorable ruling in the November 1, 2006 Order, they nonetheless
14  argue that this "success" was so de minimis as to not warrant an
15  award of attorneys' fees under the first prong.   Specifically,
16  defendants note that none of the exclusions were vacated during
17  the remand, and the current critical habitat designation remains
18  today exactly as it was the day this action commenced.   However,
19  plaintiffs need only show "<u>some degree</u> of success on the merits"
20  to warrant attorneys' fee eligibility.   <u>Ruckelshaus</u>, 463 U.S. at
21  694 (emphasis added); <u>see also</u> <u>Thomas v. City of Tacoma</u>, 410 F.3d
22  644, 649 (9th Cir. 2005) ("The fact that Plaintiff failed to
23  recover on all theories of liability is not a bar to recovery of
24  attorney's fees.").   Here, a judicial finding that defendants
25
26      [2]   Although the Ninth Circuit has adopted a higher
    standard with regard to defendants in ESA cases, the standard by
27  which to review a plaintiff's motion for attorneys' fees remains
    unchanged. <u>See</u> <u>Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.</u>, 229 F.
28  Supp. 2d 993, 998 n.3 (N.D. Cal. 2002).

arbitrarily and capriciously failed to take into account recovery benefits--in addition to a remand order requiring them to reconsider economic exclusions in their critical habitat designation--constitutes, at the very lest, "some degree of success." See Li v. Keisler, --- F.3d ----, 2007 WL 2800679 (9th Cir. 2007) (plaintiffs became prevailing parties by obtaining an order of remand for agency review of their claims).

    Moreover, the court's November 1, 2006 decision not to vacate the exclusions was consistent with its prior 2004 ruling when "[t]he Court remanded for reconsideration, but did not set aside the critical habitat designation in the interim." (Jan. 1, 2007 Order 4:13-15 (referencing the court's 2004 ruling).)  The court's prior ruling did not undermine plaintiffs' success in the 2004 case; in fact, defendants agreed to pay, and the court sanctioned, an attorneys' fee award in the previous litigation over the exclusions.  (Levine Decl. ¶ 16.)  In the present case, the court again chose not to obscure "an already incredibly complex regulation" by vacating the exclusions, but this does not mean that plaintiffs did not achieve the degree of success necessary to convey eligibility for an attorneys' fee award. (Id. at 16:23-25.)

    This litigation also substantially contributed to the goals of the ESA because it ensured that defendants--a federal administrative body and federal officials--remain in compliance with the ESA and Administrative Procedure Act, 5 U.S.C. § 551 et seq., when designating critical habitat.  See Ruckelshaus, 463 U.S. at 687 (the purpose of fee-shifting statutes is "to encourage litigation which will assure proper implementation and

administration of the act or otherwise serve the public interest"
(quoting H.R. Rep. No. 95-294, at 337 (1977), as reprinted in
1977 U.S.C.C.A.N. 1416); <u>Carson Truckee</u>, 748 F.2d at 525 ("[T]he
dominant consideration [of the ESA] is whether litigation by the
party has served the public interest by assisting the
interpretation or implementation of the . . . Act." (quoting <u>Ala.
Power Co. v. Gorsuch</u>, 672 F.3d 1, 3 (D.C. Cir. 1982)).  Despite
the fact that the designation remained unchanged following
reconsideration, plaintiffs' efforts nonetheless produced
significant real-world relief in requiring defendants to actually
consider the recovery benefits and provide a detailed
administrative record in support of their efforts--thereby
effectively legitimizing the designation nearly four years after
its original issuance.

        Therefore, the court finds that plaintiffs are eligible
for an award of attorneys' fees because they have both obtained a
sufficient degree of success and made a substantial contribution
to the goals of the ESA.  <u>See Pennsylvania v. Del. Valley
Citizens' Council for Clean Air</u>, 478 U.S. 546, 559-60 (1986)
(costs of litigation awarded when citizen performs a public
service by enforcing environmental statutes).

        B.   <u>Amount of Attorneys' Fees</u>

        Plaintiffs seek attorneys' fees in the amount of
$202,488.00, which covers work done by their two attorneys, Mr.
Levine and Mr. Segee, on the merits of the case, costs incurred
during the pendency of the case, and work done in preparing and
arguing the motion for attorneys' fees.

        The initial determination of reasonable attorneys' fees

is calculated by multiplying the number of hours reasonably

expended on litigation by a reasonable hourly rate.  Hensley v.

Eckerhart, 461 U.S. 424, 429 (1983).  There is a strong

presumption that this "lodestar" figure represents a reasonable

fee.  Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir.

1987).  To calculate the lodestar in this action, the court will

determine the reasonable hourly rate, multiply this rate by the

number of hours that plaintiffs' counsel reasonably expended to

establish a base fee award, and then determine whether this base

fee award should be further adjusted to account for plaintiffs'

degree of success in the action.

1.   Reasonable Hourly Rate

In determining a reasonable hourly rate, the district

court must consider the experience, skill, and reputation of the

attorney requesting fees.  See Chalmers v. City of Los Angeles,

796 F.2d 1205, 1210 (9th Cir. 1985).  In addition, the court is

guided by the rate "prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience

and reputation."  Blum v. Stenson, 465 U.S. 886, 895 (1984).

Here, plaintiffs seek hourly rates of $325 for Mr. Levine and

$275 for Mr. Segee.

Defendants do not dispute the skill, experience, or

reputation of either Mr. Levine or Mr. Segee.  Both attorneys

have submitted declarations that demonstrate their distinct

knowledge and experience in environmental and ESA law, including

litigating numerous cases for various client organizations to

enforce the ESA and conserve vernal pool species.  (Levine Decl.

¶¶ 2-6; Segee Decl. ¶¶ 2-5.)  Mr. Levine has developed his ESA

expertise over fourteen years, and he has also served as a law

school instructor for classes on this very subject while

directing the University of Denver Law School's environmental law

clinic for five years.  (Levine Decl. ¶¶ 2-4.)  Mr. Segee has

been a non-profit environmental lawyer since 1997, has extensive

experience enforcing environmental laws against federal agencies,

and has worked on several ESA matters.  (Segee Decl. ¶¶ 2-5.)

The aptitude of plaintiffs' attorneys was especially crucial in

this case because it required their specialized knowledge of

environmental law.  See Love v. Reilly, 924 F.2d 1492, 1496 (9th

Cir. 1991) ("Environmental litigation is an identifiable practice

specialty that requires distinctive knowledge."); Palila v.

Hawaii Dep't of Land & Natural Res., 512 F. Supp. 1006, 1008 (D.

Haw. 1981) ("Complex environmental litigation such as this case

requires special skills and specialization beyond that possess by

most attorneys in general practice.").

Defendants nonetheless contend that Mr. Levine and Mr.

Segee have proposed unreasonable hourly rates.  In support of

their argument, defendants rely on inapplicable cases that, for

example, state hourly rates from non-controlling forums, see

Modesto Irrig. Dist. et al. v. Guitierrez, No. 1:02-CV-06553

(E.D. Cal. July 5, 2006) (attorneys' fee request related to

hourly rates in the local forum of Fresno)[3] and fail to relate to

environmental litigation or the special skill and experience

involved in such cases.  See, e.g., Belliveau v. Thomson Fin.,

---

[3]     In the instant action, the court  "correctly define[s] the relevant community as the local forum of Sacramento."  Barjon v. Dalton, 132 F.3d 496, 502 (9th Cir. 1997).

10

No. 05-11752007, 2007 WL 1660999, at *3-*4 (E.D. Cal. June 6, 2007) (age discrimination case) and DirecTV v. Atwal, No. 03-2499, 2005 WL 1388649, at *1-*2 (E.D. Cal. June 8, 2006) (stolen cable reception case).[4]

In contrast to defendants' citations and submissions, plaintiffs' attorneys have supplied the court with declarations from several disinterested attorneys as to the range of fees that attorneys of similar skill, experience, and reputation in the Sacramento metropolitan area would charge for comparable legal work in a complex environmental case. (Axline Decl. ¶ 9; Mooney Decl. ¶¶ 6-8; Wagner Decl. ¶¶ 6-7.) Further, two recent cases in this district highlight instances where attorneys with significant environmental litigation experience were awarded similar rates to those that plaintiffs' attorneys now request. See Californians for Alternatives to Toxics v. Troyer, 2006 WL 2346324, at *5-*6 (E.D. Cal. August 16, 2006) (awarding reasonable hourly rates of $275 (2004), $300 (2005), and $325 (2006) for two environmental attorneys with over fourteen and nine years of specialized experience) and Soda Mountain Wilderness Council v. Norton, No. 04-2583, 2006 WL 2054062, at *5-*6 (E.D. Cal. July 21, 2006) (finding a $325 hourly rate to be reasonable for two environmental attorneys with over sixteen and

---

[4]    Defendants also argue that plaintiffs should only recover the amount of rates "actually paid." (Defs. Mem. in Opp'n. to Pls. Am. Mot. for Att'ys' Fees 19:1-3.)  This argument is not only devoid of merit, see Venegas v. Mitchell, 495 U.S. 82, 90 (1990) (holding that governing fee statute measures award, not actual fee that clients pay their lawyers), but also would negate fee awards in instances--such as the present case--where non-profit organizations retain pro bono counsel because they cannot afford to pay for a lawyer.

1  twenty years experience).[5]  Therefore, the court will apply

2  plaintiffs' requested hourly rates.

3              2.  <u>Hours Reasonably Expended</u>

4         In determining reasonable hours, counsel must submit

5  time records justifying the hours claimed to have been expended.

6  "The fee applicant bears the burden of documenting the

7  appropriate hours expended in the litigation and must submit

8  evidence in support of those hours worked." <u>Gates v. Deukmejian</u>,

9  987 F.2d 1392, 1397 (9th Cir. 1992) (citing <u>Hensley v. Eckerhart</u>,

10  461 U.S. 424, 437 (1983)).  Those hours may be reduced by the

11  court if the hours expended are determined to be excessive or

12  otherwise unnecessary.  <u>See Hensley</u>, 461 U.S. at 433-34.  Once

13  the fee applicant has provided evidence supporting the hours

14  worked, "the party opposing the fee application has a burden of

15  rebuttal that requires submission of evidence to the district

16  court challenging the accuracy and reasonableness of the hours

17  charged or the facts asserted by the prevailing party in its

18  submitted affidavits." <u>Gates</u>, 987 F.2d at 1397-98.

19

20         [5]  While the Ninth Circuit has indicated that time spent
21  on a fee application can be compensated, <u>see, e.g.</u>, <u>Davis v. City
    & County of San Francisco</u>, 976 F.2d 1536, 1544 (9th Cir. 1992),
22  defendants nonetheless argue that attorney time spent on
    negotiating fees and preparing the fee claim requires no special
23  expertise and thus should be compensated at no more than
    associate-level hourly rates.  However, defendants fail to offer
24  any support to justify this argument.  Rather, environmental
    cases in this circuit have consistently awarded fees related to
25  work preparing motions for attorneys' fees at similar rates as
    fees for work on the merits of the case.  <u>See, e.g.</u>, <u>Fed'n of Fly
26  Fishers v. Daley</u>, 200 F. Supp. 2d 1181, 1192 (N.D. Cal. 2002).
    Moreover, drafting the present fee motion could not readily have
27  been delegated to an associate because, given the background of
    the complex substantive issues raised in this motion, exercising
28  billing discretion reasonably necessitated the attention of
    experienced ESA attorneys.

                              12

1    Defendants argue that plaintiffs have proposed
2 excessive hours on case development and drafting the complaint,
3 reviewing the record and summary judgment briefing, and
4 negotiating fees and preparing the fee motion.

5         a.   <u>Case Development and Drafting the Complaint</u>
6         Plaintiffs seek compensation for 68.9 hours spent by
7 their two attorneys on developing the case and preparing the
8 complaint.  The court recognizes that plaintiffs' attorneys had a
9 number of tasks before them, which included reviewing two Federal
10 Registrar Notices regarding the critical habitat designation,
11 strategizing with their clients, and drafting and filing the
12 complaint.  However, the court agrees with defendants that the
13 number of hours is excessive.

14         As stated above, plaintiffs' attorneys were both
15 experts in environmental litigation with extensive specialty
16 experience in the conservation of vernal pool species.  Given
17 their backgrounds, and in light of the hourly fees they both
18 charge, reviewing the record and drafting a complaint relative to
19 the narrow environmental issues in this action should not have
20 taken almost seventy hours.  <u>See</u> <u>Bell v. United Princeton Props.</u>
21 <u>Inc.,</u> 884 F.2d 713, 721 (3rd Cir. 1989) ("Excessiveness of time
22 spent in light of an applicant's expertise is a legitimate reason
23 for reducing a fee award."); <u>Ursic v. Bethlehem Mines</u>, 719 F.2d
24 670, 677 (3d Cir. 1983) (noting that because "the lodestar
25 computation is a two-edged sword," "[a] fee applicant cannot
26 demand a high hourly rate--which is based on his or her
27 experience, reputation, and a presumed familiarity with the
28 applicable law--and then run up an inordinate amount of time

13

researching that same law."). Having reviewed the pleadings and
the records in this case, the court finds a more reasonable
amount of time spent working on case development and preparing
the complaint would have been thirty hours and thus will reduce
plaintiffs' recovery to this number.

b.   <u>Reviewing the Record and Summary Judgment
Briefing</u>

Plaintiffs also seek 395.4 hours for time spent
resolving the merits of the case, which they assert includes time
spent reviewing the copious administrative record compiled by
defendants, successfully resolving informal disputes regarding
the adequacy of the record, composing standing declarations,
opposing defendants' motion to strike, researching recent
developments in the law, and preparing a motion for summary
judgment. Defendants argue that this number of hours is patently
excessive and suggest limiting plaintiffs' recovery to no more
than 150 hours, but defendants focus is limited to the time that
it would take to draft the two summary judgment briefs as opposed
to a thorough review of the record and plaintiffs' additional
related tasks. Thus, the court will decline defendants'
invitation to reduce recovery to 150 hours. However, the court
nonetheless finds that plaintiffs' hours spent resolving the
merits are excessive.

While the court acknowledges that the administrative
record in this case was lengthy, it is not clear from plaintiffs'
time sheets exactly where and how the time was allotted for
administrative review. Further, various entries relating to the
summary judgment briefs are duplicative. Having reviewed

14

plaintiffs' time sheets in light of the case record, the court
finds that 300 hours would have been a more reasonable amount
spent resolving the merits of the case.  This is still a very
substantial number of hours.  In light of the complexity of the
case and the length of the summary judgment motion, however, this
amount of time is warranted.

                    c.    Negotiating Fees and Preparing Fee Motion

          Finally, plaintiffs seek 156.5 hours for time spent
negotiating and briefing fees and costs.  See Comm'r, I.N.S. v.
Jean, 496 U.S. 154, 162 (1990) (noting that time expended on a
fee motion may be included in calculating plaintiff's fee award);
Davis v. City and County of San Francisco, 976 F.2d 1536, 1544
(9th Cir. 1992) (finding that time spent on a fee application can
be compensated).  In determining the appropriate number of
recoverable hours, the court must take into account that
plaintiffs were forced to spend more time than would have been
expected on the fees dispute because the parties negotiated over
a period of several days without reaching a resolution.  Further,
defendants raised a new legal issue during negotiations regarding
the applicability of the ESA to this suit, which required further
research.[6]

          Nonetheless, the court finds that this figure is an
inordinate amount of attorney time for negotiating fees and

_____

          [6]    In their fee negotiations, defendants contended that
the EAJA, as opposed to the ESA, governs plaintiffs' fee request
and thus argued that plaintiffs' had failed to support their
requested rates.  (Pls. Reply Mem. in Supp. of Pls. Am. Mot. for
Att'ys' Fees 15:12-20.)  This contention forced plaintiffs to
argue the applicability of the EAJA in their opening brief and
secure declarations to provide evidentiary support for their
rates.  (Id.); supra n. 3.

1 drafting fee motions.  Given the nature of the litigation, the

2 court finds that eighty hours spent on negotiating fees and

3 preparing the fee motion is a reasonable figure.  See

4 Californians for Alternatives to Toxics v. U.S. Forest Serv., No.

5 05-1502, 2007 WL 2992132, at *10 (E.D. Cal Oct. 11, 2007) (noting

6 that, in an ESA case, 76.3 hours spent on fee motion was

7 reasonable).

8        3.   Degree of Success

9        After multiplying the reasonable hourly rate by the

10 hours reasonably expended, the resulting base fee may be further

11 adjusted based on "other considerations . . . including the

12 important factor of the 'results obtained.'"  Hensley, 461 U.S.

13 at 434.  Thus, courts may further reduce the fee award to

14 properly reflect the plaintiff's level of success in the case.

15 Id. at 435-36.  In determining the plaintiff's level of success,

16 the court's first step is to establish "whether the claims upon

17 which the plaintiff failed to prevail were related to the

18 plaintiff's successful claims."  Schwarz v. Sec'y of Health &

19 Human Servs., 73 F.3d 895, 901 (9th Cir. 1995).  Claims are

20 related where they "involve a common core of facts" or where they

21 are "based on related legal theories."  Hensley, 461 U.S. at

22 434-35.  Claims are not related, however, where they are

23 "distinctly different claims for relief that are based on

24 different facts and legal theories."  Id.

25       Where the successful and unsuccessful claims are not

26 related, the fee award "may not include time expended on the

27 unsuccessful claims."  Schwarz, 73 F.3d at 901.  If the

28 successful and unsuccessful claims are related, however, the

court's second step is to evaluate "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. (quoting Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986)).  Full compensation for the unsuccessful claims is warranted only where the plaintiff obtains "excellent results."  Id.

Plaintiffs initially contend that the two-part "degree of success" test does not apply in ESA cases.  Not only does their position oppose relevant precedent, see, e.g., Envtl. Prot. Info. Ctr. v. Pac. Lumber Co., 229 F. Supp. 2d 993, 999 (N.D. Cal. 2002) (noting that "[w]hile the lodestar is the presumptively reasonable fee award" in ESA cases, "it may be adjusted to accommodate degree of success"), but plaintiffs also support their contention by mischaracterizing the holding of Ass'n of Cal. Water Agencies v. Evans, 386 F.3d 879 (9th Cir. 2004) ("Evans") (refusing to reduce a full ESA award despite plaintiffs apparent lack of success).  While before the district court in Evans, the plaintiffs sought an order requiring that the administrative defendants reconsider designation for nineteen Evolutionary Significant Units ("ESUs") of fish, but the resulting court order required reconsideration for only six of the nineteen challenged ESUs.  Id. at 889.  On review of plaintiffs' subsequent attorneys' fee motion, the Ninth Circuit upheld an award of full compensation.  Far from denouncing the "degree of success" test in ESA cases, the Ninth Circuit found that the factual record in Evans did not support use of the "degree of success" test.  Id. Specifically, the court held that the district court did not abuse its discretion in refusing to

1  apply the test where a subsequent consent decree in the

2  litigation--which mooted the action--remanded defendants' final

3  rule for <u>all nineteen ESUs</u>.  <u>Id.</u>  Therefore, because the consent

4  decree meant that plaintiffs had indeed succeeded in forcing

5  consideration of all nineteen ESU designations, the Ninth Circuit

6  found that a "degree of success" inquiry would be meaningless.

7          During the course of this litigation, plaintiffs'

8  alleged four separate cognizable claims against defendants.

9  Under the first step of the "degree of success" test, it is

10  readily apparent that all of plaintiffs' claims "relate" to one

11  another because each claim is a natural extension of the others.[7]

12  In fact, all of plaintiffs' claims rely on the same common core

13  of operative facts--defendants' designation of critical habitat

14  in California and Oregon for fifteen vernal pool species listed

15  as threatened or endangered under the ESA--and revolve around

16  similar legal theories regarding compliance with the ESA.

17          Although plaintiffs' claims were related, the court

18  will nevertheless reduce the fee award under the test's second

19  step to reflect plaintiffs' limited degree of overall success in

20  this case.  Of the four claims that plaintiffs' proffered,

21  defendants argue that plaintiffs were successful on only one

22

23          [7]     Plaintiffs alleged four separate claims against
defendants in their complaint (Pls. Reply Mem. in Supp. of Am.
Mot. for Att'ys' Fees 17:22-23; Compl. ¶¶ 44-51), including
24  claims that defendants (1) unlawfully excluded critical habitat
based on economic impacts (economic exclusion claims) (Compl. ¶¶
25  44-45); (2) unlawfully excluded critical habitat based on non-
economic impacts (non-economic exclusion claims) (Compl. ¶¶ 46-
26  47); (3) failed to provide public notice and opportunity for
comment as required by both the ESA and the APA in excluding
27  areas from critical habitat (Compl. ¶¶ 48-49); and (4) engaged in
an unlawful pattern and practice of violating ESA duties when
28  designating vernal pool critical habitat.  (Compl. ¶¶ 50-51.)

minor claim--defendants' failure to weigh the recovery benefits of critical habitat in its economic exclusion analysis--and thus plaintiffs trivial success was "limited in comparison to the scope of the litigation as a whole." <u>Hensely</u>, 461 U.S. at 439-40.

However, the court recognizes the possibility that plaintiffs may have succeeded on two of their four claims as opposed to just one.  While the November 1, 2006 Order granted plaintiffs summary judgment with respect to defendants' failure to consider the recovery benefits of their economic exclusions, on remand defendants also voluntarily considered the recovery benefits of their non-economic exclusions.  (Defs.' Mem. in Opp'n. to Pls.' Am. Mot. for Att'ys' Fees 13:3-5.)  Therefore, in addition to their economic exclusions claim, plaintiffs may also be deemed to have "prevailed" on their non-economic exclusions claim under the "Catalyst Theory."

The "Catalyst Theory" allows courts to determine success even absent a ruling on the merits if (1) there is some causal relationship between the litigation brought and the practical outcome and benefit realized by the plaintiff, and (2) the benefit achieved was required by law and was not a gratuitous act of the defendant.  <u>See</u> <u>Ass'n of Cal. Water Agencies v. Evans</u>, 386 F.3d 879, 886 (9th Cir. 2004) ("Evans") (applying the "Catalyst Theory" in an ESA case resolved through settlement) (citing <u>Greater L.A. Council on Deafness v. Cmty. Television</u>, 813

1  F.2d 217, 219-20 (9th Cir. 1987)).[8]

2          There is no question that a causal relationship exists

3  between the litigation brought and the practical outcome

4  regarding reconsideration of the non-economic exclusions.   In

5  fact, the sole reason that defendants reconsidered any of their

6  exclusions, economic or non-economic, was because plaintiffs

7  achieved some requested relief via the remand order.   However,

8  defendants argue that their reconsideration of the non-economic

9  exclusions was purely a "gratuitous" act, thus defeating

10  application of the "Catalyst Theory."  Id.; see also Krocka v.

11  City of Chicago, 203 F.3d 507, 518 (7th Cir. 2000) ("Where a

12  plaintiff has obtained benefits to which we now know he was never

13  entitled, the granting of that relief does not provide grounds

14  for awarding attorney's fees.  [Plaintiff] did not prevail at

15  trial, and [defendant]'s decision to gratuitously grant him the

16  relief he requested does not change that fact.").

17          Plaintiffs argue that defendants did not engage in a

18  gratuitous act, but instead reconsidered the non-economic

19  _____

20          [8]    The United States Supreme Court has explicitly rejected
    use of the "Catalyst Theory" for suits brought under fee shifting
21  statutes that include the term "prevailing party."  Buckhannon
    Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532
22  U.S. 598, 606 (2001).  In contrast, fee shifting statutes--such
    as the ESA--that omit the term "prevailing party" and insert the
23  "whenever . . . appropriate" language for awarding fees are
    "meant to expand the class of parties eligible for fee awards
24  from prevailing parties to partially prevailing parties--parties
    achieving some success, even if not major success."  Assoc. of
25  Cal. Water Agencies v. Evans, 386 F.3d 879, 884 (9th Cir. 2004)
    (citing Ruckelshaus v. Sierra Club, 463 U.S. 680, 688 (1983))
26  (emphasis in original).  Thus, both the Supreme Court and the
    Ninth Circuit have approved use of the "Catalyst Theory" in
27  connection with statutes that provide for fee shifting "whenever
    . . . appropriate."  Id. (citing Ruckelshaus, 463 U.S. at 682
28  n.1).

1  benefits under the mistaken impression that the court order

2  mandated such action in the November 1, 2006 Order.  Even if this

3  argument is accepted, plaintiffs nonetheless cannot show that

4  "the benefit achieved was required by law."  <u>Evans</u>, 386 F.3d at

5  866.  Rather, this case was litigated to a final judgment in

6  which the court upheld the non-economic exclusions in all

7  respects.  Therefore, any decision to review the legally-valid

8  non-economic exclusions, mistaken or not, was clearly not

9  required by law and cannot provide a basis for any fee award.

10        In finding that plaintiffs only succeeded with respect

11 to their economic exclusions claim, the court must limit their

12 recovery to this success unless they are able to demonstrate that

13 they nonetheless acheived "excellent results."  <u>See</u> <u>Schwarz</u>, 73

14 F.3d at 901 (full compensation for unsuccessful claims is

15 warranted where the plaintiff obtains "excellent results").  To

16 support a contention of "excellent results" meriting recovery of

17 their entire award, plaintiffs assert that "remanding the

18 exclusions to ensure [defendants] address[] recovery was <u>the</u>

19 <u>fundamental purpose</u> of bringing the lawsuit."  (Pls. Mem. in

20 Supp. of Am. Mot. for Att'ys' Fees 1:11-14) (emphasis added.)  In

21 addition to the remand order, however, a review of the record

22 demonstrates that plaintiffs' pursuit of an order <u>vacating</u> the

23 critical habitat designation's economic and non-economic

24 exclusions in their entirety was also a fundamental purpose of

25 the lawsuit.  (<u>See</u> Pls. Reply Mem. in Supp. of Mot. to Am. J.

26 4:20-24 ("[T]he remedy which best ensures protection of the

27 fifteen threatened and endangered vernal pool species and their

28 habitat . . . is vacating the critical habitat exclusions so that

1   such areas, as defined in the original proposed rule . . . are

2   treated as proposed critical habitat during the remand

3   period.").)  Significantly, when plaintiffs received the November

4   1, 2006 Order granting them relief based solely on defendants'

5   inadequate consideration of recovery benefits, they promptly

6   moved for reconsideration, clarification, or amendment of the

7   judgment in hopes of receiving the order to vacate that they

8   originally sought.  (Pls. Mot. for Am. J.)

9          In light of degree of their actual success, plaintiffs'

10  cannot be said to have attained "excellent results" meriting full

11  compensation.  Plaintiffs sought an order that would additionally

12  vacate defendants' economic and non-economic exclusions and find

13  that defendants' overall administration of critical habitat

14  designation in this matter was unlawful.  (Compl. ¶¶ 44-51.)  In

15  these respects, plaintiffs' claims failed.  The lawsuit was

16  unable to redress many of plaintiffs' alleged injuries because

17  the exclusions were not vacated and the critical habitat

18  designation was unaltered following defendants' reconsideration

19  and the court's subsequent final judgment.  As noted above,

20  plaintiffs indeed achieved a level of legal success sufficient to

21  render them the prevailing party under the plaintiff-friendly

22  Ruckelshaus standard, supra section II.A., but not a level that

23  can be deemed "excellent."

24         Still, the court recognizes that plaintiffs' efforts

25  ensured, at the very least, proper application of the ESA for the

26  benefit of the fifteen vernal pool species.  While plaintiffs

27  were unable to garner relief with respect to the non-economic

28  exclusions, this alone cannot negate the significance associated

with a summary judgment order mandating review of defendants'

economic exclusions.  Because the vast majority of this

litigation revolved around the economic and non-economic

exclusions,[9] plaintiffs' considerable success with respect to the

economic exclusions warrants an appropriate award of attorneys'

fees.

Moreover, collateral benefits achieved through the

litigation include that defendants, during any of their future

critical habitat designations, may be more motivated to properly

address the recovery benefits as articulated by the Ninth Circuit

in <u>Gifford Pinchot</u>.  <u>See</u> <u>Fed'n of Fly Fishers v. Daley</u>, 200

F.Supp.2d 1181, 1187 (N.D. Cal. 2002) (finding that the

litigation substantially contributed to the goals of the ESA

because it delineated a proper administrative interpretation of

the statute).  Therefore, despite "succeeding" on only one of

four claims, the court will reduce plaintiffs' base fee award by

50% to reflect their overall degree of success in the case.[10]

---

[9]   The litigation was predominantly focused on the topic of the exclusions, and arguments with respect to plaintiffs' third and fourth claims--detailing defendants' failure to provide public notice and opportunity for comment, and defendants' purported unlawful pattern and practice of violating ESA duties, respectively--were either embedded in the exclusion discussion or limited to the occasional mention in plaintiffs' moving papers. (<u>See, e.g.</u>, Pls.' Mem. in Supp. of Mot. for Summ. J. 11:7-9 ("This truncated opportunity for public comment closed on July 20, 2005, only eleven days before the court mandated deadline for the final rule").)

[10]   Defendants further request that the court refuse to award any of plaintiffs' fees related to their motion for reconsideration.  While plaintiffs' motion for reconsideration was substantively unsuccessful, it nonetheless highlighted an erroneous inclusion in the November 1, 2006 Order and prompted important clarifications related to all of the claims litigated. (Jan. 24, 2007 Order 8-9.)  Thus, plaintiffs will recover their

C.   <u>Costs</u>[11]

Plaintiffs seek the recovery of $4,257.70 as reasonable costs, which are noted in their respective declarations. (Levine Decl. ¶15; Segee Decl. ¶ 11.)  The court notes that the overwhelming majority of costs relate to traveling to Sacramento for hearings.  Because all scheduled hearings in the case related to plaintiffs' affirmative case against defendants and would have been incurred regardless of whether the hearing concurrently addressed the merits of the <u>Home Builders</u> case, the court will not reduce the amount of costs per defendants' argument.

Like their attorneys' fees, however, the court will reduce plaintiffs' overall recovery of costs by 50% to reflect their limited success.  <u>See</u> <u>Cummings v. Connell</u>, 316 F.3d 886,

attorneys' fees related to their motion for reconsideration, but they will also be reduced by 50%.

[11]   Though listed under "Costs," large portions of plaintiffs' requested fees in this subsection--including travel expenses and postage--are better included within attorneys' fees because they are common expenses usually billed to paying clients.  <u>Marbled Murrelet v. Pacific Lumber Co.</u>, 163 F.R.D. 308, 327 (N.D. Cal. 1995) (awarding travel expenses under the ESA's attorneys' fees provision because "it is quite common for clients to reimburse their attorneys for the time that they spend traveling to and from court appearances . . . and to reimburse their attorneys for the costs associated with this travel"); <u>see also</u> <u>Palila v. Hawaii Dept. of Land and Natural Res.</u>, 512 F. Supp. 1006, 1010 (D. Haw. 1981) ("In addition, [under the ESA] plaintiffs are awarded, <u>as part of reasonable attorneys' fees</u>, $621.50 as reimbursement for travel costs from San Francisco to Honolulu for oral argument") (emphasis added).  Therefore, plaintiffs' requests with respect to this subsection do not necessarily implicate the "Taxation of Costs" statute, 28 U.S.C. § 1920, which only permits recovery of litigation costs in six narrow categories.  <u>See</u> <u>Gopher Oil Co., Inc. v. Union Oil Co. of Cal.</u>, 757 F. Supp. 998, 1013 (D. Minn. 1991) (awarding fees associated with attorney travel, telephone, postage, local delivery, and office expenses because the narrow constraints of § 1920 were inapplicable where separate relief is available under environmental fee-shifting statutes).

1  899 (9th Cir. 2003) (holding that "the district court may reduce

2  costs to reflect limited success on the merits"), rev'd on other

3  grounds, 402 F.3d 936 (9th Cir. 2005); Jankey v. Beach Hut, No.

4  05-3856, 2006 WL 4569361, at *10 (C.D. Cal. Dec. 19, 2006) ("As

5  with the fee award, the Court deducts 60% [of claimed costs] to

6  account for the case's limited success.").

7  IV.  Conclusion

8        In accordance with the foregoing discussion, attorneys'

9  fees, litigation expenses, and costs are awarded in the following

10  amounts:

11  Case Development/Complaint

12      Mr. Levine:

13          6.3 hrs          x    $325/hr          =    $2,047.50 +

14      Mr. Segee:

15          23.7 hrs         x    $275/hr          =    $6,517.50 +

16  Summary Judgment/Merits Briefing

17      Mr. Levine:

18          131.5 hrs        x    $325/hr          =    $42,737.50 +

19      Mr. Segee:

20          168.5 hrs        x    $275/hr          =    $46,337.50 +

21  Post Judgment/Rule 59 Motion

22      Mr. Levine:

23          25.7 hrs         x    $325/hr          =    $8,352.50 +

24      Mr. Segee:

25          16.1 hrs         x    $275/hr          =    $4,427.50 +

26  Attorneys' Fees/Cost Negotiation and Motion

27      Mr. Levine:

28          72.0 hrs         x    $325/hr          =    $23,400.00 +

```
Mr.  Segee:
      8.0 hrs        x     $275/hr        =     $2,200.00 +
```

Costs

```
Mr. Levine:
                                          =     $1,493.23 +
Mr. Segee:
                                          =     $2,764.47 +
                                          ----------------
                          TOTAL:                $140,277.70
```

Fifty Percent (50%) Degree of Success Reduction

```
    ($140,277.70)       x     .50
                                          ----------------
                        =    FINAL TOTAL:    **$70,138.85**
```

IT IS THEREFORE ORDERED that plaintiffs' motion for attorneys' fees and costs be, and the same hereby is, GRANTED, in the amount of $70,138.85.

DATED:  December 13, 2007

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE